U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 13 2018

CLERK, U.S. DISTRICT COURT
By_____
          Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

WILLIAM ALAN KENNEDY,          §
                               §
          Petitioner,          §
                               §
v.                             §        No. 4:16-CV-1075-A
                               §
LORIE DAVIS, Director,         §
Texas Department of Criminal   §
Justice, Correctional          §
Institutions Division,         §
                               §
          Respondent.          §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for a writ of habeas corpus pursuant to
28 U.S.C. § 2254 filed on behalf of petitioner, William Alan
Kennedy, a state prisoner incarcerated in the Correctional
Institutions Division of the Texas Department of Criminal Justice
(TDCJ), against Lorie Davis, director of TDCJ, respondent. After
having considered the pleadings, state court records, and relief
sought by petitioner, the court has concluded that the petition
should be denied.

### I. PROCEDURAL HISTORY

In September 8, 2010, petitioner was indicted in the 297th
District Court, Tarrant County, Texas, Case No. 1203407D, for
aggravated robbery. (Clerk's R. 2-3, doc. 13-2.) The indictment
also included deadly-weapon and habitual-offender notices. On
September 14, 2011, following a jury trial, the jury found
petitioner guilty as charged and found that he used or exhibited

a deadly weapon, a television set or a hand, during commission of the offense. (Id. at 103, 105.) Having chosen the trial court to assess his punishment, petitioner pleaded true to the sentencing-enhancement allegations in the indictment, and the trial court assessed his punishment at life imprisonment.[1] (Id. at 100.) Petitioner appealed, but the Second District Court of Appeals of Texas affirmed the trial court's judgment, the Texas Court of Criminal Appeals refused his petition for discretionary review, and the United States Supreme Court denied writ of certiorari. (Docket Sheet 1-2, doc. 12-2.) Petitioner also filed a state post-conviction application for writ of habeas corpus challenging his conviction, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. (SHR[2] & Action Taken, docs. 14-7 & 14-10.) This federal petition for habeas-corpus relief followed.

The appellate court summarized the background facts of the case as follows:

> Carrying a television set he did not pay for, [petitioner] ran over Walmart employee Bruce Florence on the way out the door. After dropping the television in the collision with Bruce, [petitioner] went directly to a nearby Target, where he successfully stole another one. Bruce had a serious pre-existing health condition—he was on a waiting list for a liver transplant—and the injuries he received when [petitioner] pushed him down

---

[1]Petitioner also pleaded guilty to four other pending criminal charges and was sentenced in those cases. (Reporter's R., vol. 5, 52, doc. 12-8.)

[2]"SHR" refers to the state court record of petitioner's state habeas proceeding in WR-32,388-02.

on the concrete floor put him in the hospital, where he died within a few days. Surveillance camera videos taken from both stores had captured [petitioner]'s image on tape, and he was arrested and tried for aggravated robbery.

At [petitioner]'s trial, a forensic video analyst testified for the State that analysis of the Walmart video revealed that [petitioner] had pushed Bruce with his hand and had run through him while trying to steal the television.

(Mem. Op. 2, doc. 12-3.)

## II. ISSUES

In three grounds, petitioner asserts that (1) his right to due process was violated by entry of a deadly-weapon finding without proof of a mental state; (2) there is no evidence that he used or exhibited a deadly weapon; and (3) he received ineffective assistance of counsel at trial. (Pet. 6-7, doc. 1.)

## III. RULE 5 STATEMENT

Respondent believes that petitioner has sufficiently exhausted his state-court remedies but that his first claim is procedurally barred from the court's review. Respondent does not believe that the petition is untimely or subject to the successive-petition bar. (Resp't's Answer 4, doc. 15.) 28 U.S.C. §§ 2244(b), (d) & 2254(b)(1).

## IV. DISCUSSION

### *Legal Standard for Granting Habeas Corpus Relief*

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and

Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Further, when the Texas Court of Criminal Appeals denies a federal claim in a state habeas-corpus application without written opinion, a federal court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to

4

the contrary" and applied the correct "clearly established federal law, as determined by the Supreme Court of the United States," unless there is evidence that an incorrect standard was applied, in making its decision. *Johnson v. Williams,* 568 U.S. 289, 298 (2013); *Richter,* 562 U.S. at 99; *Schaetzle v. Cockrell,* 343 F.3d 440, 444 (5th Cir. 2003).

Because petitioner fails to present clear and convincing evidence rebutting the state courts' factual findings, this court defers to those findings in the discussion below. 28 U.S.C. § 2254(e)(1).

### (1) and (2) Deadly Weapon Finding

Under his first ground, petitioner claims his right to due process was violated by entry of a deadly-weapon finding without proof of a mental state. (Pet. 6, doc. 1.) Respondent asserts that this claim is procedurally barred from federal habeas review. Petitioner raised this claim for the first time in his state habeas application, and the state habeas court expressly found that, as a result, the claim was forfeited for review. (SHR 71-72,75, doc. 14-10.) Federal review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *Coleman v. Thompson,* 501 U.S. 722, 729 (1991); *Harris v. Reed,* 489 U.S. 255, 262 (1989); *Amos v. Scott,* 61 F.3d 333, 338 (5th Cir. 1995).

5

To overcome the state procedural bar, a petitioner must demonstrate either cause for the procedural default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice—*i.e.,* the conviction of one who is actually innocent. *Coleman*, 501 U.S. at 750; *Finley v. Johnson,* 243 F.3d 215, 222–23 (5th Cir. 2001). Petitioner attempts to establish cause for his procedural default by alleging that defense counsel was ineffective for failing to object based on his constitutional claim at trial. (Pet'r's Reply 1, doc. 20.)

An attorney's ineffective assistance will only constitute cause for a procedural default if the petitioner: (1) exhausted state remedies for the ineffective-assistance-of-counsel claim by presenting it as an independent constitutional claim to the state courts; and (2) the attorney actually provided constitutionally deficient assistance. *Edwards v. Carpenter,* 529 U.S. 446, 451–52 (2000); *Murray v. Carrier,* 477 U.S. 478, 488–89 (1986). Petitioner cannot meet the second requirement. As discussed *infra,* counsel's omission does not support a finding of ineffective assistance of counsel which would show good cause for failing to raise the issue at trial. Petitioner fails to show cause and prejudice for failing to raise the claim at trial. Nor does he present proof of actual innocence based on "new, reliable evidence" not presented at trial. Therefore, this claim is

procedurally barred from the court's review. Petitioner is not entitled to relief under his first ground.

Under his second ground, petitioner claims there is no evidence that he used or exhibited a deadly weapon. (Pet. 6, doc. 1.) In reviewing a sufficiency-of-the-evidence claim, the applicable standard, as determined by the United States Supreme Court, is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

Applying the *Jackson* standard, and applicable state law, the state appellate court addressed this claim as follows:

### Deadly Weapon

[Petitioner] claims that the evidence is insufficient to support the jury's finding that he used or exhibited a deadly weapon, whether his hands or the boxed television set. He correctly asserts that there must be evidence in the record to establish that the manner he used or intended to use his hands or the television was capable of causing death or serious bodily injury. [Petitioner] contends, however, that "[o]n the record in this case, there is no evidence supporting a deadly weapon finding."

Both sides agree that, in assessing the sufficiency of the evidence to support a deadly-weapon finding, an appellate court must review all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the finding beyond a reasonable doubt.

The State points out that a person who uses a weapon to illegally assault another person must take his victim as he finds them. The State argues that given Bruce's serious pre-existing health condition,

the evidence is sufficient for a rational factfinder to conclude that [petitioner] used his hands or the television set in such a manner that they were capable of causing death or serious bodily injury.

The evidence showed that [petitioner] was thirty-seven years old, six feet tall, and weighed 200 pounds. When he ran into Bruce, he was carrying a boxed 26-inch television set. The collision caused Bruce to fall to the concrete floor and hit his head. When paramedics arrived, they noticed Bruce had bumps and bruises on his head. Bruce's wife testified that Bruce had been feeling pretty good that morning when he went to work, but an officer that arrived after [petitioner] knocked Bruce to the floor testified that Bruce appeared disoriented.

The medical examiner testified that Bruce's injuries did not significantly contribute to his death—he suffered a skull fracture and a brain bruise with bleeding—but in light of his late-stage liver disease, the push or strike from [petitioner] that led to his injuries was capable of causing death or serious bodily injury. He also testified as follows:

> Q. [Prosecutor] For someone with a compromised system such as you found with Mr. Florence, are the injuries that you see capable of becoming, therefore, the traumatic brain injury?

> A. There was a significant risk that he would continue to bleed at a later time, yes. I think that his demise from his liver—directly from his liver disorder occurred before these injuries developed further.

> Q. And, therefore, would the blow that—the push or strike that produces such these injuries be capable of causing death or serious bodily injury, sir?

> A. In theory, in a person of his condition, yes.

> . . .

> Q. Without reiterating, the injuries that

Bruce Florence sustained in his compromised
condition, you testified that they were
capable of causing death or serious bodily
injury given his compromised conditions,
correct, sir?

A.   He was certainly elevated risk for
developing complications that could have been
lethal, yes.

The medical examiner further testified that Bruce
was at a significant risk for internal bleeding, which
could have been precipitated from something as simple
as shaking his head, lowering his head to a pillow, or
plopping down into a chair. And, as the State points
out, the fact that Bruce succumbed to his liver disease
before he succumbed to the injuries caused by
[petitioner] running over him does not preclude a
rational finding that [petitioner] used his hands or
the television set in a manner capable of causing death
or serious bodily injury. The State was not required to
show that Bruce actually suffered serious bodily
injury, only that [petitioner] used his hands or the
television in a manner that was capable of causing
serious bodily injury.

In determining whether an object is a "deadly
weapon," a jury may consider (1) the physical proximity
between the alleged victim ,and the object, (2) any
threats or words used by the accused, (3) the size and
shape of the object, (4) the potential of the object to
inflict death or serious injury, and (5) the manner in
which the accused allegedly used the object. Here, the
jury had the benefit of watching a video that showed
how [petitioner] used his hands or the television set
when he collided with Bruce. The evidence showed that
[petitioner] pushed Bruce with his hand as he ran
through him carrying a boxed television set, and there
was testimony that [petitioner] placed his hand
directly on Bruce's chest as he did so. The proximity
factor, therefore, weighs in favor of the deadly-weapon
finding. There is no evidence of any threats or words
used by [petitioner]; the only eyewitness is deceased,
and the videotaped recording of the event had no audio.
Regarding size of the object and its potential to
inflict death or serious bodily injury, [petitioner] is
not a small man; he stood between five feet eleven
inches and six feet tall, and weighed approximately 200

9

pounds. The television had a twenty-six inch screen, and there was no testimony regarding its weight. Still, the jury could reasonably conclude that a man of [petitioner]'s size, carrying a television set while running into another man of compromised health could mete out serious injury with his hands or the set. Finally, regarding the manner in which [petitioner] allegedly used his hands or the television set, he ran into Bruce, who was sickly, and pushed him down to a concrete floor, where he hit his head, became disoriented, and had to go to the hospital, where he died a few days later. Viewed in the light most favorable to the verdict, a rational jury could have combined the evidence from the video and the testimony of the witnesses, including that of the medical examiner, to conclude that [petitioner] used a deadly weapon. We hold, therefore, that the evidence in this case is sufficient to sustain the jury's deadly-weapon finding.

(Mem. Op. 7-11, doc. 12-3.)

Petitioner has not shown that the state court's adjudication of the claim, including its application of the *Jackson* standard, is contrary to, or involves an unreasonable application of federal law, as determined by the United States Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence, and any reasonable inferences to be drawn therefrom.

Petitioner contends that the medical examiner's testimony that his hand or the boxed television set could, "in theory," be used in a manner capable of causing serious bodily injury or death was not enough to establish that his hand or the television were actually capable of causing serious bodily injury or death. (Pet'r's Mem. 14-15, doc. 7.) While a hand or a boxed television

are not deadly weapons per se, the evidence, as analyzed by the appellate court, and viewed in the light most favorable to the guilty verdict, was such that a rational jury could have found beyond a reasonable doubt that the weapon alleged in the indictment—a hand or a television set, were used in a manner which placed other persons in his path in actual, rather than merely hypothetical, danger. The state court's disposition of the claim is consistent with *Jackson.* Petitioner is not entitled to relief under his second ground.

### (3) Ineffective Assistance of Counsel

Under his third ground, petitioner claims he received ineffective assistance of counsel at trial. (Pet. 7, doc. 1.) A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to

11

eliminate the distorting effects of hindsight. *Id.* at 689.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of § 2254(d)(1). *See Gregory v. Thaler,* 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state courts have adjudicated the ineffective-assistance claims on the merits, this court must review the petitioner's claims under the "doubly deferential" standards of both *Strickland* and § 2254(d). *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011); *Richter,* 562 U.S. at 105. In such cases, the "pivotal question" for this court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter,* 562 U.S. at 101.

Petitioner claims that his trial counsel was ineffective in the following respects:

    (1)    failing to object to the state's incorrect statement of the law in final argument concerning when the jury was to consider the lesser included offense;

    (2)    failing to object to the lack of clarity in the jury instructions on when the lesser included offenses were to be considered;

    (3)    failing to make a constitutional challenge to the deadly-weapon finding; and

    (4)    failing to object that the state's video expert should not have been allowed to testify because this was not a legitimate basis of expert testimony.

12

(Pet. 7, doc. 1.)

The fourth claim was raised on direct appeal and the state
appellate court, applying the *Strickland* standard, and
acknowledging that the record was silent regarding counsel's
reasons for not "pursuing every conceivable objection to the
State's expert," addressed the claim as follows:

> [C]ounsel's strategy is obvious. In his opening
> statement counsel told the jurors that they would be
> able to see for themselves from the video that
> [petitioner] did not intentionally run into Bruce, but
> rather that their "feet trip[ped] over each other." And
> as the following excerpt from counsel's closing
> argument makes clear, the strategy of playing the video
> of [petitioner]'s collision with Bruce "frame by frame"
> allowed counsel to argue that the State's analyst's
> testimony is based on "junk science."
>
>> Ladies and gentlemen of the jury, one of
>> the things that came out in this trial is
>> words from Bruce Florence's own mouth. This
>> was a freak accident is what he told Mrs.
>> Florence. And we're going to play that video
>> back for you and stop it frame by frame. And
>> that was not done by the D.A.'s employee who
>> called himself a video expert. Didn't take
>> any pictures for you to say he's viewing this
>> video.
>>
>> Why doesn't he have some evidence? It's
>> like junk science. There's no evidence. He's
>> just saying, I see the video, and that's the
>> way I see it. Kind of like Detective Moore. I
>> see the video, this is [the] way I see it.
>> Well, you can see it just as good as they can
>> see it. And you can see it even better
>> because we'll slow it down.
>>
>> But he provided you no pictures for his
>> basis. He provided you no slower video or
>> frame-by-frame video, and that's junk
>> science. He said you can see what you can see
>> just as good as he can. He's watching the

same video set. But you'll see it better
because we'll slow it down. He may have
slowed it down, too. He didn't testify to
that.

Counsel then replayed the video for the jury and
acknowledged that it showed, as the State's expert had
testified, that [petitioner] had pushed Bruce with his
hand. But as he suggested in his opening statement,
counsel used the video to argue that [petitioner] was
not guilty of aggravated robbery, only theft, because
he did not intentionally push Bruce down, merely
tripped over him:

Watch him go over to the left and cut
off and come back to the right. And you can
certainly see a pushing of the hand. But you
see their feet are close together.
[Petitioner] is tripping and falling forward.

And he is guilty today, there's no doubt
about that; guilty of felony theft. We can
see that with the intent to steal. . . . He
acquired that TV with intent to steal, just
unsuccessful. That's not a defense. He's
guilty of felony theft. He pled guilty of
felony theft yesterday of the Target theft.
So he's not trying to get [off] Scott free
here. He's already got a felony theft
yesterday, asking for another felony theft
today.

Counsel also noted that the State brought three
witnesses to testify about what they thought the video
showed and counsel argued that although the defense
could have hired its own witnesses to testify that
[petitioner] tripped, what the video actually showed
was for the jury to decide.

A strategy is not outrageous simply because it
fails to produce an acquittal. Here, counsel reasonably
could have calculated that the risk of not making the
objections appellate counsel now faults him for not
making was outweighed by the payoff of playing the
video for the jury, slowly, frame-by-frame, and arguing
that the State's expert opinion was based on junk
science.

Although we need not recognize any strategy behind an attorney's actions during trial to determine an ineffective-assistance claim, in this case, counsel's strategy is both obvious and reasonable. Moreover, we refuse to second guess counsel's trial strategy simply because it failed to result in an acquittal. Accordingly, on the record presented here, we cannot say that [petitioner] received ineffective assistance . . . .

(Mem. Op. 3-7, doc. 12-3 (citations omitted).)

Based on the documentary record and his own recollection of the trial court proceedings, the state habeas judge entered the following findings of fact regarding all four claims:

9. The jury charge instructed the jury as follows:

> Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant of the offense of aggravated robbery and proceed to consider whether the defendant is guilty of the lesser included offense of robbery.

10. The jury charge in this case is the same as the charge that was approved of [by the Texas Court of Criminal Appeals] in *Barrios v. State*, 283 S.W.3d 348, 349, 353 (Tex. Crim. App. 2009).

11. Because the jury charge was proper, there is a plausible basis in strategy or tactics for not objecting to it.

12. No reasonable likelihood exists that the outcome of the proceeding would have been different had counsel objected to the jury charge.

13. During closing, the State argued to the jury that "only if all 12 of you unanimously agree that this [petitioner] is not guilty of aggravated robbery, then you are to next consider whether he's guilty of robbery."

14. During closing, [petitioner]'s counsel argued;

15

In reality, if you turn on your Court's
Charge to Page 9, you don't even have to
consider that page because we're not asking
you to find him not guilty. We're asking you
to find him guilty of a lesser-included
offense on Page 8 at the bottom of the page,
the presiding juror, that he's guilty of
theft. Because that's what he did; he stole a
television set that day.

15. The jury was advised that their verdict must be
unanimous.

16. The jury reached their decision in less than three
hours.

17. It is reasonable that the trial court would only
have instructed the jury to "follow the law in the
jury charge" if counsel had objected to the
State's argument.

18. There is no evidence that a reasonable likelihood
exists that the outcome of the proceeding would
have been different had counsel objected to the
State's argument.

19. Counsel did not raise a constitutional challenge
in the trial court as to the deadly weapon finding
in this case.

20. There was evidence that [petitioner] intentionally
pushed the victim down onto the concrete floor in
an attempt to escape with the television.

21. There was evidence that [petitioner] intended to
use his hands and the television box to make
contact with the victim and push him out of the
way.

22. There was evidence that [petitioner] was a large
man carrying a large box when he pushed the victim
down.

23. There was evidence that the victim suffered a
skull fracture as a result of [petitioner] pushing
him down.

24. Due to his size and his actions, there was

evidence that [petitioner]'s hands and television box were capable of causing serious bodily injury or death.

25. Because there was evidence to support that [petitioner] intended to use his hands and the television box in a way capable of causing serious bodily injury or death, a due process challenge to the deadly weapon finding would have been frivolous.

26. There is a plausible basis in strategy or tactics for not raising a due process challenge.

27. No reasonable likelihood exists that the outcome of the proceeding would have been different had counsel objected to the deadly weapon finding on the basis of denial of due process.

28. The Second Court of Appeals held that trial counsel's strategy for not objecting to the video expert testimony was obvious and reasonable.

29. [Petitioner] presents no additional evidence regarding whether counsel should have objected to the video expert testimony.

30. There is a plausible basis in strategy or tactics for the alleged misconduct.

31. No reasonable likelihood exists that the outcome of the proceeding would have been different but for the alleged misconduct.

(SHR 72-74, doc. 14-10 (all other citations omitted).)

Based on its factual findings, and applying the *Strickland* standard and relevant state law, the state habeas judge entered the following legal conclusions:

23. *Barrios v. State* held that a jury instruction like the one given here was proper.

24. [Petitioner] has failed to prove that counsel should have objected to the jury charge or requested a clarification.

17

25. "A facial challenge is based solely upon the fact of the penal statute and the charging instrument, while an applied challenge depends upon the evidence adduced at a trial or hearing."

26. The elements of a state offense are a matter of state law.

27. In Texas, a "deadly weapon" is statutorily defined as:

    (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

28. A culpable mental state may be established through circumstantial evidence.

29. "The [deadly weapon] provision's plain language does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury."

30. "[T]he deadly weapon element of an aggravated robbery charge does not carry a separate culpable mental state, nor is it required to carry one. Only each offense is required to have a culpable mental state, not each element of an offense."

31. Based on the legal authority at the time, and the applicable evidence, a decision to not raise a due process challenge to the deadly weapon finding on the basis that [petitioner] did not know that he was using an item capable of causing serious bodily injury or death would have been the result of reasonable trial strategy.

    . . .

35. "[S]pecific allegations of deficient attorney performance that were rejected on direct appeal are not cognizable on habeas corpus as part of a larger ineffective assistance of counsel claim

when the defendant does not offer additional
evidence to support that specific claim of
deficient performance in the habeas proceeding.

36. Because the specific allegation that counsel was
    ineffective for failing to object to the video
    expert testimony, and [petitioner] fails to
    present any additional evidence for support, it is
    not cognizable in this application for writ of
    habeas corpus.

37. Because there is a plausible basis in strategy or
    tactics for the alleged actions, no affidavit is
    needed from trial counsel.

38. [Petitioner] has failed to prove that counsel's
    representation fell below an objective standard of
    reasonableness.

39. A party fails to carry his burden to prove
    ineffective assistance of counsel where the
    probability of a different result absent the
    alleged deficient conduct sufficient to undermine
    confidence in the outcome is not established.

40. "[A] court need not determine whether counsel's
    performance was deficient before examining the
    prejudice suffered by the defendant as a result of
    the alleged deficiencies. The object of an
    ineffective claim is not to grade counsel's
    performance. If it is easier to dispose of an
    ineffectiveness claim on the ground of lack of
    sufficient prejudice, which we expect will often
    be so, that course should be followed."

41. [Petitioner] has failed to show that there is a
    reasonable probability . . . that the result of
    the proceeding would have been different had
    counsel objected to the State's closing argument
    regarding the jury charge.

42. [Petitioner] has failed to show that there is a
    reasonable probability . . . that the result of
    the proceeding would have been different had
    counsel objected to the jury charge.

43. [Petitioner] has failed to show that there is a
    reasonable probability . . . that the result of

the proceeding would have been different had counsel requested a jury instruction clarification.

44. [Petitioner] has failed to show that there is a reasonable probability . . . that the result of the proceeding would have been different had counsel raised a constitutional challenge to the deadly weapon finding or the finding of guilty of aggravated robbery with a deadly weapon.

45. [Petitioner] has failed to show that there is a reasonable probability . . . that the result of the proceeding would have been different had counsel objected to the video expert testimony.

46. [Petitioner] has failed to show that there is a reasonable probability that, but for the alleged acts of misconduct, the result of the proceeding would have been different.

47. [Petitioner] has failed to prove that he received ineffective assistance of trial counsel.

(Id. at 77-80 (citations omitted).)

The Texas Court of Criminal Appeals, in turn, denied relief based on the trial court's findings. Relying on the presumptive correctness of the state courts' factual findings, and having independently reviewed petitioner's claims in conjunction with the state court records, the state courts' adjudication of the claims is not contrary to or an unreasonable application of *Strickland*.

Petitioner's claims are conclusory, with no legal and/or evidentiary basis, involve matters of state law or strategic and tactical decisions made by counsel, or would have required counsel to make frivolous or futile objections, all of which

generally do not entitle a state petitioner to federal habeas relief. *See, e.g., Strickland,* 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for post-conviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or frivolous objections); *Green v. Johnson,* 160 F.3d 1029, 1037, 1042 (5th Cir. 1998) ("[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue" and "counsel is not required to file frivolous motions or make frivolous objections").[3]

Petitioner presents no evidentiary, factual, or legal basis in this federal habeas action that could lead the court to

---

[3]Although respondent agrees that the state's misstatement of the law in closing argument was objectionable, she asserts that no prejudice resulted from counsel's failure to object, which is the same conclusion reached by the state habeas court. (Resp't's Answer 20, doc. 15.) Improper prosecutorial argument does not present a constitutional claim cognizable on federal habeas review unless, in the context of the entire trial, such argument was "so prejudicial that the petitioner's state court trial was rendered fundamentally unfair within the meaning of the Fourteenth Amendment Due Process Clause." *Ward v. Whitley,* 21 F.3d 1355, 1364 (5th Cir. 1994); *Felde v. Blackburn,* 795 F.2d 400, 403 (5th Cir. 1986). To establish that a prosecutor's jury argument is fundamentally unfair, "the petitioner must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." *Byrne v. Butler,* 845 F.2d 501, 507 (5th Cir. 1988); *Blackburn,* 795 F.3d at 403. Assuming, without deciding, that the prosecutor's argument was a misstatement of the law, the improper argument did not render petitioner's trial fundamentally unfair. The challenged prosecutorial argument was an isolated statement, not repeated or persistent misconduct. (Reporter's R., vol. 4, 55, doc. 12-7.) The ample evidence presented in this case regarding guilt was not so insubstantial that but for this one misstatement petitioner would not have been convicted. Therefore, despite the impropriety of the argument, it was not so prejudicial that it rendered petitioner's trial fundamentally unfair.

conclude that the state courts unreasonably applied the standards set forth in Strickland based on the evidence presented in state court. 28 U.S.C. § 2254(d). Thus, he fails to overcome the "doubly" deferential standard that must be accorded counsel in the context of § 2254(d).

For the reasons discussed herein,

The court ORDERS that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED April 13, 2018.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE